turn to 20-3198 U.S. v. Alcorta. I need to run, change classes. I'll be 10 seconds. Okay, good. Mr. Bailey, you may proceed. Thank you, Your Honor. May it please the court and counsel, my name is Rick Bailey and I represent Mr. Alcorta, the appellant below. This is a unique case that raises a unique situation involving interference with choice of counsel. Most typically, the interference with the right of counsel claims arise when the district court has taken some action either to force defense counsel to withdraw from the case or to deny a defendant's request to change counsel. This is not one of those cases. Have we ever had a case? Where we, or for that matter, another circuit court or the Supreme Court has ever recognized the denial of a right to use chosen counsel when there was no involvement by the court or the government for that matter? No, Your Honor. Neither side has found a case on either side of that question. This case comes in kind of a unique posture, but I think this case can be resolved by a straightforward application of well-settled principles of law and doesn't require the court to plow new ground or reach beyond what the law has already set out. At least for purposes of discussion, I would push back on the notion that there isn't case law on either side of this. I mean, as an initial matter, if there's no action by the government and there's no action by the court, then where's the basis for a Sixth Amendment violation to begin with? Your Honor, it's important to keep in mind that the context of this 2255 motion was alleging ineffective assistance of counsel. And so the focus of that is on defense counsel's action. And when looking at an ineffective assistance of counsel claim, the court doesn't normally look at what the judge did or what the government did in the case. Well, I would suggest here an analytical distinction. There are two kinds of ineffective assistance of counsel claims one could be bringing. One would be the Strickland claim, where you're looking at the acts of the lawyer. And in that context, the government action comes from the fact that the government allows a prosecution of someone who really didn't have competent counsel. That's the government action. That's not the kind of claim that is at issue here. The kind of claim that's at issue here is counsel of choice. And therefore, in a counsel of choice claim, I think the Supreme Court is pretty clear, that doesn't turn on how effective the lawyer is. That turns on whether you had your right of choice interfered with. And so the question is, who interfered with that right of choice? That's exactly right, Your Honor. The interfered with that right. And here the interference was defense counsel himself, by failing to disclose, by concealing a conflict, which clearly the professional rules of conduct required him to disclose. But his client could make a meaningful choice. I'm sorry, counsel. Well, I apologize to you for talking over you. But when you say conflict, you know, that's one of the words in the English language that has a couple of meanings, particularly in this context. He certainly had a conflict, apparently, according to the defense counsel's wife, with the prosecutor. You know, I may have conflicts with someone, but that doesn't mean I have a conflict of interest. Divided loyalties is what we typically think of in that context. I don't know that hostility between a prosecutor and the defense counsel would qualify as a divided loyalty, as a conflict of interest. So I disagree with that, Your Honor. And if we look at the particular rule that's involved, Kansas Rule of Professional Conduct 1.7A2, which is cited in our brief, it provides that a conflict exists when, and here's the quote, there is substantial risk that the representation will be materially limited by a personal interest of the lawyer. How can the defendant, let's say the defense lawyer just absolutely hates the prosecutor, just despises him. How does that impair his selection of strategy? I just don't, I don't understand the connection between hostility to the prosecutor would impair the options available to the defense counsel in zealously representing his client. I think, Your Honor, it's more, it's less the fact that defense counsel hated the prosecutor or had disagreements with the prosecutor, and more that the prosecutor had disagreements and had affirmative action after the defense counsel. And that is the potential action that could have ramifications on what plea agreements were offered, how the case would be tried by the government, what types of evidentiary agreements could or could not be reached, and a whole host of things that can't really be quantified. And it's, it's more that focus. This isn't a case where simply defense counsel hated the government. But what is alleged here is that the government had taken affirmatively aggressive action towards the defense counsel. And that had the defense, had Mr. Alcorta known of that, he would have chosen a different counsel that was not subject to that same level of scrutiny and action and disdain by the government. And that's where the rules of professional conduct require an attorney to disclose that kind of information. Because you can't make a meaningful choice if you don't have all of the information necessary to make that choice intelligently. Here, we have to assume that that conflict existed because the district court did not hold any kind of an evidentiary hearing. And so we have to take everything in Mr. Alcorta's declaration at face value and accept it as true to the purposes of this. The district court didn't do anything. The district court was not even informed of this issue. And that's why I'm struggling to understand where there is any action that could implicate the Constitution here. I mean, what the fact that this lawyer has, let's assume a conflict, if your client never informs the court of it never seeks to render a decision about it, then where is there a basis for a reviewable decision that there was error? We're in the business of reviewing and correcting error of judicial officers, not in something that just exists. So where's the basis for a ruling? Well, Your Honor, I believe it's the same basis that you have typically in a Strickland case, where when a defense attorney fails to make objections that he should make. And that's where I go back again, the theory that you have propounded from the beginning is a counsel of choice issue. That is not a Strickland theory of ineffective assistance. In effect, and you have argued for structural error. Strickland doesn't have except for as a general matter, Strickland involves a showing of prejudice. So your brief is not framed as a Strickland ineffective assistance of counsel claim, it is framed as a counsel of choice claim. And in order to effectuate that presumably at some point, the court needs to rule on that. Your Honor, typically the way these cases have arisen, you're correct in that there's clear distinction between Strickland cases and the choice of counsel cases because of how the choice of counsel cases have arisen. This case, I think, brings to light the fact that those claims, while normally can be viewed as separate and distinct, here are merged together. Well, in the merger, you're asking for structural error. You don't get structural error under Strickland. So you're going to have to decide what you want. I mean, are you arguing this as a counsel of choice claim, or are you arguing this as a Strickland claim? Your Honor, I believe, and I'm trying to find the citation in my brief as I speak here, I apologize. But I believe that I referenced cases in our brief that indicated that even in a Strickland claim, you can have structural error. That's where counsel doesn't operate at all. And those are the cases where, I forgot what the name of the case is now, but where the Supreme Court has said where counsel is effectively not counsel at all. That's not the theory that is based upon the cases that you frame. If you're talking counsel of choice, and that's the language you've used, then explain to me why, for example, the Henson case, which we asked you to be prepared to respond to, does it give you a problem? Because in that case, in effect, the problem was there was no ruling by the court on the conflict issue, just as in this case, that you didn't give the court a chance to rule on it. And if the court didn't have a chance to rule on it, what is it that we're this case under the facts. And the context of how Henson arose is important in contrast to how the issue arose here. In Henson, the issue arose because the government had filed a motion to bring the conflict to the court's attention. The district court looked at it, had a hearing, received evidence, and ultimately decided that it tentatively believed that a conflict existed and told counsel, I'll give you by a date certain to either provide me more authority, provide me waivers, or withdraw from the case, or reach some agreement with the government. And the counsel, without providing the waivers, without providing additional, simply voluntarily withdrew. In that case, you couldn't say that the Henson had been deprived of his right to counsel because his attorney and he voluntarily took the action. It was not something that was mandated by the court. And why aren't you worse off than a Henson defendant? Because you didn't even bring the issue to the attention of the court. The court didn't even have a chance to develop a tentative view on your conflict of choice issue. And in Henson, the language I think that was used was fatal. It was fatal that that withdrawal took place, and the court did not have an opportunity to respond. Here, silence gave the court no opportunity to do anything. Your Honor, I think I can give you a kind of a more extreme example of facts to help clarify what our position is in this case, and I think makes it more clear. Let's assume rather than having a conflict between the prosecution and the defense counsel, that the prosecution and defense counsel had an ongoing romantic relationship that was not disclosed by defense counsel when his client interviewed him and made the choice of counsel. And that ongoing relationship was not disclosed at any time during the trial. Defendant is convicted and only after trial learns that there had been this ongoing relationship that in many ways probably impacted the trial of the case. In that case, we have no action by the district court because again, the district court was not aware of it. Yet I don't believe this court would have difficulty finding that the defendant in that case was deprived of a meaningful choice of counsel and received ineffective assistance of counsel because that conflict was not revealed. There would be two things going on there. I think that as I understand it, there's nowhere that you've alleged there was an actual conflict of interest here. Have you? We have, Your Honor. Where did you do that? Because my recollection is you have disclaimed the notion that there is an actual conflict of interest here. The conflict is the conflict under 1.782, Your Honor, that the risk of defense counsel's judgment in the case being materially limited because of some personal interest of him. And you use the word risk. Well, I'm talking about an, I mean, the example you gave is an example where I don't think anybody would have difficulty finding an actual conflict of interest. And then we look, and then one could say, look at whether there was prejudice that would flow from that. Again, your argument has always been predicated on structural error, that we don't need to look at whether there was prejudice because there was a denial of conflict of choice. So yes, I like your example because your example, it seems to me, highlights some points of disjunction here. I mean, are you showing that there's been any actual conflict that can be demonstrated? Yes, you say there's a risk, but was there an actual conflict? We don't have any evidence of that, Your Honor, because there was no evidentiary hearing. Oh, you didn't tell anybody. And Mr. Alcorta doesn't have the information as to the prior relationship between his counsel and the prosecution. That rests with them. And neither of them have ever been questioned to be able to bring the facts of that to bear. So for purposes of the motion below and for purposes of this court's review, the court has to take Mr. Alcorta's allegations and statements in his declaration as true, that there was a relationship there, a prior relationship between the two that materially impacted the relationship, and that if he'd have known about it, he would never have hired this attorney. Judge Harts, may I pursue for a question? Yes, please. The material impact is a legal characterization. We don't have to take that as true. We could take the point that there was some animosity between the two of them. But as pointed out by the government, at a certain point, Mr. Alcorta knew of that animosity, and he continued on with the trial. And so the point would be, at that juncture, what basis is there to claim any harm at all? Because at that point, he knew, and he continued on. Well, Your Honor, as he stated in his declaration, he knew in the midst of trial is when he learned of this. And he made the decision not to raise it because he believed that he would not be allowed to change counsel at this late juncture, even if he raised the issue. And even though he reached that conclusion without the opportunity to consult with counsel or have any legal background, he's probably accurate. Because as both the district court found in its decision, as well as in the cases that we cited in our reply brief, the case law is full of cases where courts have refused to allow a defendant to change counsel in mid-trial. And this court has virtually always upheld those decisions as subject to the right of the court to govern its own docket and to prevent delay and prejudice. So even had he raised it, there's no indication that the decision would have been changed. Mr. Bailey, I'm going to let this issue be pursued, but you're past your time, so try to be more succinct when you respond. I apologize, Your Honor. I'm satisfied, Judge Hart. Okay, thank you. Any questions, Judge Vacarac? Well, with your indulgence, I just had one question. And I don't recall you addressing this in your reply brief, so I thought I'd give you a chance now. On page 27 of Mr. Brown's brief, on the Allain error, I'm switching gears a little bit. It's a very specific question. He argues that the judge gave, assuming arguendo that there is an Allain error, that there is a 10-year mandatory minimum, the judge imposed a 20-year sentence and never once mentioned anything about the mandatory minimum being a factor in his decision to give a 20-year sentence. So he argues one of his arguments on harmlessness of the Allain error is no harm, no foul. The judge never relied on that. I don't think you addressed that in your reply brief, but I don't know if we have cases saying that that's essentially a waiver of any non-obvious flaws in his argument. And I don't see any obvious flaws in Mr. Brown's reply brief. Mr. Brown, are you overlooking something? Oh, no, Your Honor. Thank you very much, Mr. Kander. Thank you, Judge Barnes. Okay. Sorry, I was still listening, even though I wasn't sitting here. I thought, go ahead and start, Mr. Brown. I apologize. Thank you, Your Honor. For the record, James Brown, jurors for the United States. Your Honors, I think we just stand on the briefs for issue two, the Allain error. Well, I want to ask you about that Allain error issue. Strickland contemplates a reasonable probability of a different outcome. What is the different outcome here? It would seem to me the different outcome is a jury finding, as the district court found, whether but for the error, the jury would have checked the box. It's not whether he would receive whether he might have, he could have received the same sentence. And so I'm not even clear why these arguments regarding sentence, the sentence he ultimately would receive, are relevant here. Well, the claim is that there is a Allain error. And if the Allain error had no, the only way to judge the impact of an Allain error for purposes of Strickland's prejudice prong is to wait a minute. That's that's the point. My point is reasonable probability of a different outcome. The question is, what's the outcome? Why the outcome could be the fact finding by the jury as to whether it was over 500 grams or not. I mean, what what was I mean, how do you phrase I mean, the district court use the jury finding as the basis of whether there was evidence that or overwhelming evidence such that it is clear that the jury would have checked the same, would have checked the same box. And yet your argument, you do have that argument, then you also talk about what the sentence was. And what I'm saying is, why is it your belief that those two that that sentence prism is the relevant one here? Well, because Strickland talks about whether the result of the proceeding would have been different. And here, the result of the proceeding, as it's impacted or affected by the Allain error is manifested by the sentence itself. That's the only way to be manifested and and be a result of the proceeding or as a result of the error. And well, that's not what the court did. That's not what the district court did. The district court didn't talk about what sentence would have given him. It talked about whether there was the evidence would have been such that the jury would have checked the same box. So clearly, you know, I'm not making this stuff up. Somebody else viewed it that way. And so I'm trying to understand what is the predicate for your prism, that it would be the sentence he would have received. And and to be more specific, let me shift it a little on the sentencing front. You have this argument, which which seemed interesting to me, which suggests that that missed the court would not have been disabled, which the word that you use in reaching the same sentence. Well, the fact that the court had the power to give him the same sentence doesn't I'm not sure how that indicates that the court you there it wouldn't have been a reasonable probability. I mean, that it's that would eliminate the possibility of Strickland prejudice. I mean, the fact that I have the power to do something doesn't mean that I'm going to do it. And in fact, in the lane, the court talked about the notion that the fact that you focus on the jury checking the box, I'm not checking the box, making the five that whether the district court or the jury makes the finding, the language you'd use on page 115 of lane was what sentence what sentence the defendant might have received is not the relevant inquiry. And so so might granted, that's different than would. But But the fact that the court would not have been disabled from sentencing him in this way would is irrelevant. Well, we made the argument just to illustrate that the that the jury's finding had no impact on the sentence, the defendant admitted to over 3000 grams of methamphetamine is relevant conduct based on the relevant conduct alone, the court could have imposed the sentence. I think when we add that to the fact defendant asked for departure down with the 10 years, the court said, No, I can't convince myself that that departure is warranted based on the seriousness of the offense. I think we can we can safely say that, you know, that's just one factor that the court would not have been disabled. The court would have done it anyway. The courts, those are those are two different things, Mr. Brown. I mean, those two statements are very different. One, the court wasn't disabled, meaning it could have the other meaning it would have there was no legal barrier. Well, the point I'm making is why is the if you're be the court would have done the same thing? Not the question of could have was the fact that it could have it there, the court might have done something different. And we and if we're in the range of speculation as to whether the court would have done something different. Why is there? Why would not the strickling prejudice be established? Well, your your honor, we we make the argument both that we make the argument about disabled show that there was no legal barrier that prevented the court from doing anything that it would have been the same sense. Then we also make the argument that the court would not have done this because it actually considered whether to give the defendant a downward variance and decided not to based on the seriousness of the offense and the amount of relevant conduct. But I mean, he admitted that applied to his case. So that's that's the would have piece. Mr. Brown. I think the concern here is the framing of your argument. I I'm inclined to agree with what I think is Judge Holmes position that at the least, you'd have to show that the sentence would have been the same even if the jury had not made this fine. And do you think that's the case? And if so, why do you think the jury, the judge would have sentenced the same way even without this finding by the jury? Well, because the effect of the finding was to it was to overlay a mandatory minimum of 10 years on the defendant's sentence for sentencing purposes. That was the only effect of the finding. And there's no evidence in the record that that finding, the jury's finding had any effect or impact on the selection of the sentence imposed. That's why we say that. Plus, we have the district court's own words saying I'm not going to go down to 10 years because he doesn't deserve it based on the seriousness of offense, the amount of relevant conduct that he agreed to. That's why at the time of sentencing, you said something about the defendant admitted, I guess, in response to the pre-trial report that the amount of drugs he used was was at least as much as the jury found. Is that correct? Yes. It was an admission to 3,000 grams. PSR came out 3,000 something grams. He didn't contest that for purposes of sentencing and his lack of contest is deemed an admission under this court's case law. That was 3,000 grams. Jury verdict was 500 grams. Is that the, what was the amount? The jury's verdict was 500 grams or more. So he admitted, I mean, one way that the jury's finding could make a difference is if the judge said, well, I'm confident there were 500 grams involved here because the jury made a finding. But here we have an uncontested statement in the pre-trial report, pre-sentence report, that he was involved with 3,000 grams. Correct. The actual amount is 3,626 grams of actual methamphetamine that the PSR came out with. He didn't contest that amount. So it's deemed admitted. Okay. So that's what the district court was working with. That's why it wouldn't have affected the selection of the sentence. I just wish you had made it clear that that's the point you're addressing because I share Judge Holmes' apparent concern about the way you framed the issue, but... Go ahead, Judge Holmes. And quite apart from the sentencing theory, I mean, do you accept the premise that as the district court did, that one could argue that there was overwhelming evidence, including, you could include his admission related to the PSR, that more than 500 grams was involved, and that in the conspiracy, and that he was linked to the conspiracy, hence the jury even, but for the error, the jury would have still checked the box. Correct. That was the theory the district court used. And that was, I mean, that's one of the three arguments you made. So you're not backing away from that argument in terms of confirming the result, right? Absolutely not backing away. I try to not confuse the court when I write these briefs and frame the issues. I apologize for confusing you here. You've got a lot going on, Mr. Brown. I'm not being critical. I'm just trying to understand. That's all. And I was perfectly clear, I think, but I just want to make sure that I haven't now gotten confused. Okay. Now, and I'm with everything you've just said, and Judge Holmes has said, except with regard to the reference to the PSR, because at Erlane, we can't consider the PSR, right? It is predicated on a jury finding, and the whole point is beyond a reasonable doubt. Well, no. The beyond a reasonable doubt in Erlane only applies to a statutory threshold that increases a mandatory minimum sentence. It does not apply to the computation of relevant conduct, which can still be found by preponderance of the evidence by the district court. I totally agree with that. But I think the whole point, as I understand it, of the comment made with Judge Holmes and Judge Hartz is we're not talking about relevant conduct. We're talking about the harmlessness of the Erlane error. Right. The Erlane error had nothing to do with it because the sentence was ultimately selected based on the relevant conduct and not the Erlane error. Okay. Yeah. I'm on the same page. You proceed. So address the other issue, if you would. So I'll just make three main points that unfortunately stopped me to ask questions at any point, obviously. The first point is that, as Judge Holmes pointed out by directing us to the Henson case, there's no authority for the proposition that a defense counsel's omission, such as failing to disclose a personal potential conflict, here's the air quotes, can provide a basis to establish a Sixth Amendment claim. In fact, Henson says that is not the case. On page 1271, the court states that only when the trial court unreasonably or arbitrarily interferes with the defendant's right to counsel of choice do we agree a conviction cannot stand, irrespective of whether the defendant's been prejudiced. That's Henson, page 1271. So here there was no intervention of the trial court, as Judge Holmes pointed out. Trial court. There was never a finding. The point was never brought to the attention of the trial court. If we take Henson's statement at its face value, the lack of the trial court involvement here dooms the defendant's claim, and he's done on that basis alone. So that's how we read Henson. There's also some other helpful language in Henson, and that is the defendant voluntarily acted in a manner that unambiguously abandoned the claim. He made a considerate decision not to pursue the claim, and now he's stuck with that decision. I know this is sort of a softball question, Mr. Brown, but I'm also counting on the fact that you'll be candid with the court. I mean, I didn't see this as a Strickland claim. I mean, my understanding of the way this brief was framed, and I thought that was the way you responded, was that this was a counsel of choice issue. I mean, do you recognize the distinction between those two? Yes, we put a quote in our brief distinguishing the three types of claims. On page 17, there are three types of Sixth Amendment claims. As this court stated in Nichols, the right to counsel of choice, right to effective assistance, and right to be represented by counsel. There are three distinct types of Sixth Amendment claims. He has selected a counsel of choice claim, not a Strickland claim, and we even point out in our brief that his citation to an authority citing Strickland is not opposite to his claim at all. So we agree with the court. It's a counsel of choice claim. That's how he's presented it the whole way along, and that's why he asked for structural error. If it's not, if it's a Strickland claim, then he has to show prejudice. He doesn't show prejudice if it makes no attempt to show any prejudice whatsoever, and he has to under Strickland, so he loses if it's a Strickland claim. The second point I'd like to make, other than the Henson case that the court is well aware of, is that under Supreme Court precedent, the defendant has to have been erroneously prevented from being represented by the lawyer he wanted. That's the Gonzalez case. He was not erroneously prevented from being represented by the lawyer he wanted. He knew about this issue. He made a considered and reflected decision not to do anything about it. He was not prevented from not being represented by the lawyer he wanted. He made a decision not to bring it to the court. He said his reason was because he wanted to just the trial. Counsel has talked about, well, that would have been denied anyway. We don't know. That's just guessing what the court would have done. That's just speculating. We don't know, but we do know his reason because he stated it, that after considered reflection, he decided to stick with counsel. That means that he was never erroneously prevented by anyone other than himself from getting counsel of choice, so that forecloses his claim as well. He makes no of being erroneously prevented from getting counsel of choice. The third point I'd like to make, I don't have much time, is that we really don't have any flesh on this claim. There are some bones there. There are some inferences you can draw, but there's really nothing that says what this whole supposed conflict between the prosecutor and the defense counsel was about. My colleague has characterized it as affirmatively aggressive action by the government. There's nothing in the record that would show it's affirmatively aggressive action, or he also characterized it as disdain by the government. There's no evidence that there's any disdain by the government towards defense counsel here. We really don't even know how these people felt about each other other than a statement from supposedly made by counsel's paralegal to the defendant. I mean, she can't speak for the prosecutor. She doesn't know how prosecutor felt. I mean, the whole idea that they didn't like each other is based on a whole string of speculative inferences, and the court was right to say the claim is just vague and conclusory. Thank you, Mr. Brown. Any questions from members of the panel? I believe Mr. Bailey's time was expired. Is that right, Ms. Lindstrom? Yes, that's right, Judge. Okay. Case is submitted. Counselor excused. Thank you both.